IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PCH LAB SERVICE, LLC,<br><br>              Plaintiff,<br><br>v.<br><br>NEWMAN MEMORIAL HOSPITAL, INC. and SHATTUCK HOSPITAL AUTHORITY,<br><br>              Defendants, | Case No. 17-CV-7971<br><br>Hon. Harry D. Leinenweber |

### DEFENDANTS' OPPOSITION TO THE PETITION OR, IN THE ALTERNATIVE, RULE 12(b)(1) MOTION TO DISMISS AND/OR STAY

Defendants, Newman Memorial Hospital, Inc. ("Newman") and Shattuck Hospital Authority ("Authority"), hereby move this Court to dismiss the Complaint against them or, alternatively, for the Court to stay this action in its entirety, for the primary reason that a case substantially similar to this case is currently pending.

### STATEMENT OF FACTS

1. Plaintiff, PCH Lab Services, LLC ("PCH Lab"), filed this action in this Court on November 3, 2017 (the "Complaint"). Thereafter, PCH Lab filed a Notice of Petition setting this action to be heard by this Court on November 21, 2017, at 9:30 a.m., or as soon thereafter as counsel may be heard. Defendants were served in this action on November 13, 2017.

2. Subsequently, this Court held a hearing on November 28, 2017. The Court, based on an agreement among the parties, granted Defendants until December 13, 2017, to file a responsive pleading; granted Plaintiff until December 22, 2017, to file a reply; and set the matter for hearing on January 24, 2018, at 9:00 a.m.

3. <u>Four months before</u> the instant action, on June 30, 2017, Newman and the Authority had filed a petition in the District Court of Ellis County, State of Oklahoma, case number CJ-2017-14, naming as defendants PCH Lab and others (the "Oklahoma State Court Action"). Newman and the Authority thereafter amended their petition twice to its current form attached to PCH Lab's Complaint as <u>Exhibit A</u>.

4. In the Oklahoma State Court Action, Newman and the Authority alleged against PCH Lab the following causes of action, all based on its participation in an insurance fraud scheme: fraud (Count III), civil conspiracy (Count IV), tortious interference with existing contracts (Count V), declaratory judgment as to Laboratory Management Agreement (the "Agreement") (Count VII), declaratory judgment as to the Expanded Facility Laboratory Agreement (Count VIII), cease and desist (Count XIII), accounting (Count XV), and fraudulent transfers (Count XVI).[1]

5. In response, on September 19, 2017, PCH Lab filed a motion to enforce arbitration pursuant to the laboratory agreements ("Motion to Arbitrate"). [Motion to Arbitrate, attached hereto as <u>Exhibit 2</u> (exhibits omitted).]

6. After extensive briefing by PCH Lab on one side and Newman and the Authority on the other, the District Judge in the Oklahoma State Court Action, the Honorable F. Douglas Haught, heard oral argument on the Motion to Arbitrate on October 17, 2017. [PCH Lab's Reply in Support of its Motion to Arbitrate, attached hereto as <u>Exhibit 3</u> (exhibits omitted).]

7. At that hearing, Judge Haught found that there was a material dispute as to the formation of the agreements to arbitrate between the parties. Accordingly, Judge Haught overruled PCH Lab's Motion to Arbitrate and set the relevant arbitration issue, for trial on March 15, 2018,

---

[1] Newman and the Authority are not alone in the allegations of insurance fraud against PCH Lab. *See also* Complaint, Aetna Inc. and Aetna Life Insurance Company, Plaintiffs, Eastern District of Pennsylvania, Case No.: 2:17-cv-04354-BMS, a true and correct copy of which is attached hereto as <u>Exhibit 1</u> (exhibits omitted).

1

at 9:30 a.m. in his Court in Ellis County, State of Oklahoma. [Transcript of October 17, 2017, Hearing ("Hearing Transcript"), excerpts from which are attached hereto as Exhibit 4, at 52-54.]

## INTRODUCTION

Fed.R.Civ.P. 12(b)(1) permits a motion to dismiss where the Court lacks subject matter jurisdiction. It is well settled that the FAA does not grant federal question jurisdiction. *See Vaden v. Discover Bank*, 556 U.S. 49, 129 S. Ct. 1262, 173 L.Ed.2d 206 (2009). Further, this Court does not have diversity jurisdiction, because the underlying controversy, the Oklahoma State Court Action, does not have complete diversity. *See Vaden v. Discover Bank*, 556 U.S. 49, 129 S. Ct. 1262, 173 L.Ed.2d 206 (2009). One of the parties to the Oklahoma State Court Acton is SNB Bank, N.A. f/k/a The Shattuck National Bank, N.A. ("SNB Bank"), a national banking association with its principal place of business in Oklahoma, which precludes diversity. Consequently, subject matter jurisdiction is absent, and Fed.R.Civ.P. 12(b)(1) requires this Court to dismiss Plaintiff's Complaint.

Even if the Court were to determine for some reason that this matter should not be dismissed pursuant to Fed.R.Civ.P. 12(b)(1), this action should be dismissed or stayed pending the outcome of a substantially similar action, namely the Oklahoma State Court Action, in which PCH Lab filed a Motion to Arbitrate under the very Agreement at issue in this action. The District Judge in Ellis County, Oklahoma, overruled the Motion to Arbitrate and set an evidentiary hearing. Judge Haught found that he was not convinced of the formation or enforceability of the Agreement. Accordingly, he set the issue of formation of the Agreement for an evidentiary hearing on March 15, 2017, at 9:30 a.m. in his Court. (The particular date for that evidentiary hearing was agreed upon by the parties in the Oklahoma State Court Action, including PCH Lab.) Now, in an attempt to stall Defendants' discovery in preparation for the evidentiary hearing and to circumvent the Oklahoma State Court Action, Plaintiff has filed the instant action.

**ARGUMENT AND AUTHORITIES**

**I: THE COMPLAINT SHOULD BE DISMISSED, OR ALTERNATIVELY THIS ACTION STAYED, BECAUSE THIS COURT SHOULD ABSTAIN FROM EXERCISING JURISDICTION UNDER THE *COLORADO RIVER* DOCTRINE.**

Where parallel litigation is being carried out in a state court proceeding and a federal court proceeding to determine the rights of the parties with respect to the same or a substantially similar question of law, the *Colorado River* doctrine provides that the federal court may dismiss or stay the later brought federal action and give deference to the state court action. *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). The *Colorado River* abstention doctrine rests on considerations of "wise judicial administration," seeking to minimize wasted effort and recognizing the general principle against duplicative litigation. *Id*. at 817.

To determine whether dismissal or a stay is appropriate under *Colorado River*, the court must undertake a two-part inquiry. First, the threshold question is whether the federal and state actions are parallel. *Id*. Next, once it is established that the suits are parallel, the court must consider a number of non-exclusive factors that might demonstrate the existence of the circumstances warranting a dismissal or stay. *Clark v. Lacy*, 376 F.3d 682, 685 (7th Cir. 2004).

A. <u>This federal action and the Oklahoma State Court Action are parallel and squarely fit within the meaning of the *Colorado River* doctrine.</u>

Generally, a suit is parallel when it involves the same parties litigating substantially the same issues in another forum. *Tyler v. City of South Beloit, Ill.*, 456 F.3d 744, 752 (7th Cir. 2006). To be parallel, the two actions <u>need not be identical</u>, but must involve substantially the same parties and issues. *Pieleanu v. Mortgage Electronic Registration Systems, Inc*., No. 08 C 7404, 2010 WL 1251445, at *1 (N.D. Ill. March 24, 2010). Further, "the mere presence of additional parties or issues in one of the cases will not necessarily preclude finding that they are parallel." *AAR Int'l, Inc. v. Nimelias Enterprises S.A.*, 250 F.3d 510, 518 (7th Cir. 2001) (citing *Caminiti & Iatarola,*

*Ltd. v. Behnke Warehousing, Inc*., 962 F.2d 698, 701 (7th Cir. 1992); *Lumen Constr., Inc. v. Brant Constr. Co., Inc.*, 780 F.2d 691, 695 (7th Cir. 1985)). In sum, two suits are parallel when "substantially the same parties are contemporaneously litigating substantially the same issue in both state and federal court." *Jacobson v. City of Chicago*, 233 F.Supp.2d 1001, 1007 (N.D. Ill. 2002). Therefore, a comparison of the claims and parties in the Oklahoma State Court Action with those in this action is required.

In this case, PCH Lab has filed a petition to compel arbitration pursuant to section 4 of the FAA against Newman and the Authority. *See* Complaint. In particular, PCH Lab contends that the claims brought against PCH Lab in the Oklahoma State Court Action should be compelled to arbitration pursuant to the Agreement. *Id*. Newman's and the Authority's state court claims also involve the Agreement. *See* Oklahoma State Court Action Petition, attached as <u>Exhibit A</u> to Plaintiff's Complaint. PCH Lab also is a defendant in the Oklahoma State Court Action, and PCH Lab filed a Motion to Arbitrate in the Oklahoma State Court Action. *See* Motion to Arbitrate, <u>Exhibit 2</u>.

Overall, Newman and the Authority brought claims against PCH Lab grounded in the Agreement and tort law; PCH Lab as a defense to these claims sought an order compelling arbitration from the Judge in the Oklahoma State Court Action. Therefore, although there are additional parties and claims in the Oklahoma State Court Action, the Oklahoma action: (i) is between the same parties, (ii) encompasses the same Agreement, (iii) includes litigation as to the FAA, and (iv) even arises out of identical facts. Quite clearly, the two suits are parallel, with substantially the same parties and substantially the same claims.

B. <u>Remaining factors also should lead this Court to decline jurisdiction in deference to the parallel Oklahoma State Court Action.</u>

4

Upon finding that this action is parallel to the Oklahoma State Court Action, the next inquiry in a *Colorado River* analysis is whether the particular circumstances warrant abstention. *Clark*, 376 F.3d at 685. The Seventh Circuit has identified ten (10) non-exclusive factors in a *Colorado River* analysis to determine whether such circumstances exist: (1) the difficulties of a state and federal court assuming jurisdiction over the same *res*; (2) the relative inconvenience of the federal forum; (3) the need to avoid piecemeal litigation; (4) the order in which the cases were filed; (5) whether state or federal law provides the rule of decision; (6) whether the state action protects the federal plaintiff's right; (7) the relative progress of the case; (8) the presence or absence of concurrent jurisdiction; (9) the availability of removal; and (10) the vexatious or contrived nature of the federal claim. *Sverdrup Corp. v. Edwardsville Cmty. Unit School Dist. No. 7*, 125 F.3d 546, 548-50 (7th Cir. 1997); *see also Caminiti & Iatarola, Ltd. v. Behnke Warehousing, Inc.*, 962 F.2d 698, 700 (7th Cir. 1992). These factors are not merely a checklist, however. *Sverdrup*, 125 F.3d at 550. No single factor is dispositive and "[t]he weight to be given to any one factor may vary greatly case to case, depending on the particular setting of the case." *Mercury*, 460 U.S. at 16.

The first *Colorado River* factor is inapplicable, as neither the federal court nor the state court has assumed jurisdiction over property in any of the present actions, although it should be noted that all property that could be in dispute is located in Ellis County, Oklahoma. Any future need to assume jurisdiction over property would be in favor of the Oklahoma State Court Action.

The second *Colorado River* factor, the relative inconvenience of the federal forum, weighs in favor of deference to the state court. When determining the inconvenience of the federal forum, it is important to look at "physical proximity of the federal forum to the evidence and witnesses." *Am Bankers Ins. Co. v. First State Ins. Co.*, 891 F.2d 882, 885 (11th Cir. 1990). Defendant

Newman is a critical access hospital located in rural Ellis County, Oklahoma. Likewise, the Authority is an Oklahoma governmental entity operating in Ellis County. Moreover, the vast majority of the employees, witnesses, evidence, and alleged acts are or were in Ellis County. It is unnecessary and unreasonable to require these witnesses and parties to travel over 900 miles and nearly 15 hours of driving time each way to litigate issues that have been heard or could be heard in Ellis County, Oklahoma. On the other hand, PCH Lab is already doing business in Oklahoma.

The third *Colorado River* factor, the need to avoid piecemeal litigation, weighs heavily in favor of deference to the state court. "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Day v Union Mines Inc.*, 862 F.2d 652, 659 (7th Cir. 1988) (quoting *American Int'l Underwriters (Philippines), Inc. v. Continental Ins. Co.*, 843 F.2d 1253, 1258 (9th Cir. 1988)). Here, litigation over whether the Agreement that contains the FAA clause was ever formed in the first instance and is valid and enforceable is already well underway in the Oklahoma State Court Action. There is a significant risk that the two courts could reach different results. Permitting such parallel actions to proceed simultaneously thus would result in undesirable "duplicative and wasteful litigation" with the "potential of inconsistent resolution of the issue." *Caminiti*, 962 F.2d at 1008 ("Continuing to adjudicate this action would constitute a waste of judicial resources given that another [case] . . . seeks substantially the same relief in state court."). The piecemeal litigation that would occur if this action continues would not promote judicial economy, the touchstone of the *Colorado River* doctrine.

The fourth *Colorado River* factor, the order in which the cases were filed, also breaks in favor of deference to the state court. The Oklahoma State Court Action was initially filed on June 30, 2017, with the second amended petition filed on August 7, 2017. In contrast, the instant action

6

was filed on November 3, 2017, some 125 days or over four months <u>after</u> the Oklahoma State Court Action.

The fifth *Colorado River* factor, whether state or federal law provides the rule of decision, weighs in favor of deference to the state court. Although Defendants, Newman and the Authority, recognize that in the instant case the FAA is at issue, the Defendants have challenged the Agreement on grounds of formation, validity, and other contractual defenses. State law, not federal law, should control the decision whenever a party challenges the agreement itself. *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (finding that when deciding whether parties have agreed to arbitrate claims, including arbitration itself, a "court generally . . . should apply state-law principles that govern the formation of contracts.").

Moreover, the underlying claims in the Oklahoma State Court Action, such as fraud, civil conspiracy, and tortious interference with contracts, consist of state-law issues. While Plaintiff contends that the FAA, a federal law, governs the alleged Agreement, as previously stated courts have held that the FAA in itself does not rise to the level of a federal question for subject matter jurisdiction purposes. Therefore, while federal law may be relevant at some point in the proceeding, it certainly cannot be substantial enough to outweigh the number of state-law issues before the courts.

The sixth *Colorado River* factor, whether the state action protects the federal plaintiff's right, also comes down in favor of deference to the state court. Federal courts have found that a state court is a concurrent forum where motions to enforce arbitration agreements pursuant to the FAA may be considered on their merits. *Nationstar Mortg., LLC v. Knox*, 351 F.App'x 844, 852 (5th Cir. 2009). Federal courts have stated that they have no reason to doubt the adequacy of a state court's ability to resolve arbitrability issues pursuant to the FAA. *Id.*

Further, the Seventh Circuit favors abstention when "the same questions of law and fact are presented [in state proceeding] as in the federal case and the state court can resolve these questions just as effectively." *Clark*, 376 F.3d at 688. As discussed above, in the Oklahoma State Court Action, the exact same question as to compelling arbitration pursuant to the Agreement has arisen, the parties to the dispute over the Agreement are the same, and Plaintiff is even attempting to compel claims of Defendants to arbitration that were asserted in the Oklahoma State Court Action; without a doubt, the questions of law and fact presented in the two proceedings are the same.

Finally, this particular District Court has "long held [the] view that the federal courts do not possess capabilities superior to those of our state court colleagues." *Jacobson v. City of Chicago*, 233 F.Supp.2d 1001, 1009 (N.D. Ill. 2002); *see also CIGNA Healthcare of St. Louis, Inc., v. Kaiser,* 181 F.Supp.2d 914 (N.D. Ill. 2002), aff'd, 294 F.3d 849 (7th Cir. 2002). Therefore, because the state forum will adequately and sufficiently resolve the issues presented, and has already exercised jurisdiction over the issue, the sixth factor should weigh in favor of abstention.

The seventh *Colorado River* factor, the relative progress of the cases, likewise weighs in favor of deference to the state court. The Oklahoma State Court Action has proceeded through the initial stage of briefing by the parties; the Court in the Oklahoma State Court Action heard the parties' oral argument at a hearing on October 17, 2017, in Ellis County, Oklahoma; and the state Court made a ruling from the bench as to the Motion to Arbitrate. Thus, the Oklahoma State Court Action has progressed substantially further than this action, weighing in favor of dismissal or stay. *See e.g., Clark*, 376 F.3d at 688 (affirming that the relative progress of the two actions weighed in favor of stay where a motion to dismiss had been fully briefed, argued, and decided in the state

8

court action); *Caminiti*, 1991 WL 337364 at 5\* (finding that the relative progress in the state and federal proceedings favored abstention where a pretrial order had been filed in the state action).

The eighth *Colorado River* factor, the presence or absence of concurrent jurisdiction, weighs slightly in favor of deference to the state court. The Defendants have disputed the validity of this Court's diversity jurisdiction in this action, but at any rate diversity jurisdiction is not exclusive. PCH Lab has conducted business in Oklahoma and is already a party to the Oklahoma State Court Action. Further, Oklahoma's expansive long-arm statute extends Oklahoma courts' jurisdiction over non-residents to the outer limits permitted by the Oklahoma Constitution and the Due Process Clause of the United States Constitution. *Conoco Inc. v. Agrico Chem. Co.*, 2004 OK 83, ¶ 17, 115 P.3d 829, 834; *see also* 12 O.S. § 2004. Accordingly, as PCH Lab does business in Oklahoma, the Ellis County court is an adequate and appropriate forum in which to litigate the parties' disputes.

The ninth *Colorado River* factor is inapplicable, as the time period for removal has expired. *See generally Jacobson,* 233 F.Supp.2d at 1008; *see also* 28 U.S.C. § 1446(b).

The tenth *Colorado River* factor, the vexatious or contrived nature of federal claim, should weigh in favor of abstention. It was completely unnecessary for Plaintiff to bring a petition to compel arbitration here since its Motion to Arbitrate had already been filed, argued, and decided in the Oklahoma State Court Action. *See generally Jacobson*, 233 F.Supp.2d at 1009 (question whether plaintiffs filed the federal suit rather than joining the state action to "improperly seek[] another forum in which to test their claims.") The Plaintiff here took the matter one step further than the plaintiff in *Jacobson*, because PCH Lab was already a party to the underlying Oklahoma State Court Action.

9

Simply put, PCH Lab is forum shopping for the purpose of evading the ruling in the Oklahoma State Court Action on the Motion to Arbitrate. Other federal courts have found that forum shopping weighs in favor of a stay "when the party opposing the stay seeks to avoid adverse rulings made by the state court . . ." *Int'l Asset Mgmt., Inc. v. Holt*, 487 F.Supp.2d 1274, 1276 (N.D. Okla. 2017) (quoting *Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1371 (Cal. 1990)). Hence, the filing of a separate and independent petition to compel arbitration, if not vexatious is at the very least contrived, and weighs in favor of abstention.

In summary, abstention is warranted, as abstention is appropriate when the state and federal actions are parallel. *Jacobson v. City of Chicago*, 233 F.Supp.2d 1001, 1007 (N.D. Ill. 2002). The additional factors discussed above also show that the advantages of a dismissal or stay of this action would outweigh the disadvantages. *Clark v. Lacy*, 376 F.3d 682, 685 (7th Cir. 2004).

## II: THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF JURISDICTION.

Newman and the Authority move to dismiss Plaintiff's Complaint due to this Court's lack of subject matter jurisdiction pursuant to Rule 12(b)(1), because the parties are not diverse, nor is there a federal question present.

In any case before a federal court, jurisdiction must be established as a threshold matter. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 84 (1998). United States District Courts are courts of limited subject matter jurisdiction. *Minor v. Prudential Securities, Inc.*, 94 F.3d 1103, 1105 (7th Cir. 1996). Subject matter jurisdiction can be acquired by U.S. District Courts through only two avenues: (i) a federal question or (ii) diversity. *Id.*

The Federal Arbitration Act, 9 U.S.C. §§ 1-16, does not grant federal question jurisdiction. *See Vaden v. Discover Bank*, 556 U.S. 49, 129 S. Ct. 1262, 173 L.Ed.2d 206 (2009); *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 25 n. 32, 103 S. Ct. 927, 74 L.Ed.2d 765 (1983). It follows that a U.S. District Court cannot review a petition to compel

10

arbitration solely pursuant to 9 U.S.C. § 4 under the purview of a federal question. Federal courts require an independent basis for jurisdiction before the court may entertain a petition or complaint under the FAA. *Minor*, 94 F.3d at 1105-06.

In the instant case, the sole basis alleged by Plaintiff's Complaint for subject matter jurisdiction is diversity. However, in a recent United States Supreme Court case, the Court stated that in cases filed to enforce putative arbitration agreements pursuant to the FAA, a district court must look ***to the underlying controversy*** to determine whether it has subject matter jurisdiction. *Vaden v. Discovery Bank*, 129 S.Ct. 1262, 1273 (2009). Furthermore, in *Bergquist v. Mann Bracken, LLP*, 592 F.3d 816 (7th Cir. 2010), the Seventh Circuit recognized that federal courts must look to *Vaden*, 192 S.Ct. 1262 (2009), in determining "how jurisdictional rules work for disputes that entail arbitration" including diversity and amount in controversy. *Id*. at 818-19.

A challenge to subject matter jurisdiction may either be a factual or a facial challenge. *Mortensen v. First Fed. Sav. & Laon Ass'n*, 549 F.2d 884, 891 (3rd Cir. 1977). In a facial challenge, the opposing party argues that the plaintiff has not sufficiently "*alleged* a basis for subject matter jurisdiction." *Apex Digital, Inc. v. Sears, Roebuck & Co*., 572 F.3d 440, 443 (7th Cir. 2009) (emphasis in original); *see also Silha v. ACT, Inc*., 807 F.3d 169, 173 (7th Cir. 2015). In reviewing a facial challenge, the court must accept the well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *Apex,* 572 F.3d at 443. In contrast, in a factual challenge, the opposing party contends that "there is *in fact* no subject matter jurisdiction," even if the pleadings are formally sufficient. *Id*. (emphasis in original) (internal citations and quotation marks omitted). In a factual challenge, the court may look <u>beyond the pleadings and review evidence</u> submitted to determine if subject matter jurisdiction exists. *Id*.

In raising a factual challenge, the defendant bears the initial burden of proffering evidence to call the plaintiff's complaint into question. *Apex*, 752 F.3d at 444 (explaining that once the defendant has produced evidence calling the plaintiff's complaint into question, "[t]he presumption of correctness that we accord to a complaint's allegations falls away"); *see also Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n*, 149 F.3d 679, 685 (7th Cir. 1998) ("The presumption of correctness that we accord to a complaint's allegations falls away on the jurisdictional issue once a defendant proffers evidence that calls the court's jurisdiction into question.") Thereafter, "the plaintiff bears the burden of coming forward with competent proof that jurisdiction exists." *Gagliano v. Cytrade Fin., LLC*, No. 09-4185, 2009 WL 3366975, at *2 (N.D. Ill. Oct. 16, 2009) (citing *Apex*, 572 F.3d at 444).

Here, Newman and the Authority factually challenge the subject matter jurisdiction of the Plaintiff's Complaint. Plaintiff filed the instant action pursuant to 28 U.S.C. § 1332, alleging that complete diversity exists in this case, as Defendants are citizens of Oklahoma and not Illinois. However, a named defendant in the Oklahoma State Court Action (who would correspond to a plaintiff in this "reversed" federal action) is a citizen of the State of Oklahoma. *See* Oklahoma State Court Action attached as <u>Exhibit A</u> to Plaintiff's Complaint. As stated above, it is ***to the underlying controversy*** to which this Court must look regarding questions of subject matter jurisdiction. *Vaden*, 129 S. Ct. at 1273; *see also* 9 U.S.C. § 4; *Mercury,* 460 U.S. at n. 32. Thus, complete diversity does <u>not</u> actually exist once the Court reviews the evidence outside Plaintiff's Complaint. Plaintiff apparently plucked SNB Bank from the matter before this Court in an attempt to create diversity jurisdiction. The complete diversity required in this case, *Magruder v. Fid. Brokerage Servs. LLC*, 818 F.3d 285, 288 (7th Cir. 2016), is, in truth, absent.

The petition in the Oklahoma State Action alleges that SNB Bank has a first lien on all of Newman's equipment, general intangibles, inventory, all accounts, and contract rights. That lien secures three promissory notes given by Newman to SNB Bank and guaranteed by the Authority. The contract rights on which SNB Bank has a lien include the Agreement at issue in this action. For that reason, the parties' rights are intrinsically interwoven, and SNB Bank has a significant interest in the outcome of this action.

SNB Bank filed a counterclaim and crossclaim in the Oklahoma State Court Action against all Parties to this action. In its counterclaim, SNB Bank alleged that the promissory notes between SNB Bank and the Defendants hereto are due and owing and currently unpaid. *See* SNB Bank's Answer, Counterclaims, and Cross-claims attached hereto as Exhibit 5 (exhibits omitted). In its crossclaim,[2] SNB Bank alleged that it has a first and prior lien "in and to all accounts and contract rights, Equipment, General Intangibles, Inventory . . . of the Plaintiffs [Newman and the Authority] herein." *See* Third-Party Petition (*sic*) of Defendant and Third-Party Plaintiff, SNB Bank, N.A. attached hereto as Exhibit 6 (exhibits omitted). Importantly, PCH Lab and PCH Management Newman, LLC, a related entity of PCH Lab, denied that the Bank had a first and prior lien in and to the above described collateral. *See* Answer to Third-Party Petition (*sic*) attached hereto as Exhibit 7(exhibits omitted).

Had Plaintiff joined SNB Bank in the Complaint at bar, complete diversity would not have existed on the Complaint's face. Yet, SNB Bank is a party to the underlying controversy upon which this Court's jurisdiction must be based.

It is also noteworthy that Plaintiff has demanded a stay of the Oklahoma State Court Action, which includes SNB Bank's claims, but SNB Bank has not been joined by Plaintiff as a party to

---

[2] Which SNB called a "Third-Party Petition."

13

the action at bar. How can a stay be effective against SNB Bank's claims if it is not a party to this federal action? Plaintiff's very Complaint and prayer for relief concede the absence of jurisdiction here, and admit the existence of a parallel Oklahoma State Court Action.

## CONCLUSION

Plaintiff should not be permitted to commandeer Defendants' underlying action in the Oklahoma State Court Action and shear off the portion it desires by tossing out certain parties and issues. Plaintiff here was not and will not be deprived of any rights or remedies by litigating its alleged agreement to arbitrate in the Oklahoma State Court Action. In fact, Plaintiff filed and argued the Motion to Arbitrate in Oklahoma State Court Action. It is clear that Plaintiff is simply seeking another bite of the apple. If Plaintiff disagrees with the Judge's decision in the Oklahoma State Court Action the proper relief is to appeal within the Oklahoma State court system.[3] Plaintiff should not be permitted to evade the Oklahoma State Court Action's upcoming evidentiary hearing on the merits of the Agreement by filing the instant action and presenting the *same arguments* on the *same issues* to a new Court, like some sort of game of whack-a-mole.

Fed.R.Civ.P. 12(b)(1) requires this Court to dismiss this action for lack of subject matter jurisdiction. Should this Court not dismiss this action, the action should be stayed, because the factors set forth in the Colorado River Doctrine weigh in favor of abstention.

In the event that this Court determines that it has jurisdiction over the subject matter of this action and that it should not be dismissed or stayed, Defendants ask for leave to show the Court that the agreement to arbitrate should not be enforced because of defects in its formation.

---

[3] If PCH Lab intends the instant action to function as an appeal of the Oklahoma State Court Action the Rooker-Feldman Doctrine precludes this Court from granting Plaintiff's relief. In addition, if this is Plaintiff's intent, Defendants request additional briefing on the issue.

14

WHEREFORE, Defendants, Newman Memorial Hospital, Inc. and Shattuck Hospital Authority, pray that this Court dismiss the Complaint against them or to stay this action in its entirety pending the outcome of the substantially similar Oklahoma State Court Action that is currently pending. In the event the Court declines to dismiss or stay this action, Defendants ask for leave to show that the agreement to arbitrate should not be enforced due to defects in its formation.

    Respectfully submitted,

/s/ Mark W. Bina
Mark W. Bina (ARDC #6288024)
QUARLES & BRADY LLP
300 N. LaSalle Street, Suite 4000
Chicago, IL 60654
Phone: 312-715-5000
Mark.Bina@Quarles.com


J. Clay Christensen (OBA #11789)*
T.P. Howell (OBA #10347)*
Brock Z. Pittman (OBA #32853)*
CHRISTENSEN LAW GROUP, P.L.L.C.
The Parkway Building
3401 N.W. 63rd Street, Suite 600
Oklahoma City, Oklahoma 73116
Telephone: (405) 232-2020
clay@christensenlawgroup.com
lynn@christensenlawgroup.com
brock@christensenlawgroup.com

* Pro Hac Vice petitions forthcoming

*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

This shall certify that on this 13th day of December, 2017, a true and correct copy of the above and foregoing was sent via electronically to the following parties registered for ECF in this case:

Daniel C. Curth
Sean P. Williams
Goldstein & McClintock, LLLP
111 W. Washington Street, Suite 1221
Chicago, IL 60602
*Attorneys for Plaintiff*

                                                    /s/ Mark W. Bina
                                                    Mark W. Bina

QB\49791103.2