## IN THE DISTRICT COURT OF ELLIS COUNTY
## STATE OF OKLAHOMA

| | |
|---|---|
| SHATTUCK HOSPITAL AUTHORITY, an Oklahoma Public Trust and NEWMAN MEMORIAL HOSPITAL, INC., an Oklahoma Non-Profit Corporation,<br><br>       Plaintiffs,<br>v.<br><br>PCH MANAGEMENT NEWMAN, LLC, an Oklahoma Limited Liability Company; PCH LAB SERVICES, LLC an Illinois Limited Liability Company; PCH LAB SERVICES, LLC, a Delaware Limited Liability Company; SUN ANCILLARY MANAGEMENT, LLC, a Texas Limited Liability Company; MISSION TOXICOLOGY LLC, a Texas Limited Liability Company; INTEGRITY ANCILLARY MANAGEMENT, LCC, a Texas Limited Liability Company; CORNERSTONE FORCES, LLC, a Nevada Limited Liability Company; JOHN DOES 1-10; and THE SHATTUCK NATIONAL BANK, N.A.,<br><br>       Defendants,<br><br>SNB BANK, N.A., formerly known as THE SHATTUCK NATIONAL BANK, N.A.,<br><br>       Defendant and<br>       Third Party Plaintiff,<br><br>v.<br><br>PCH MANAGEMENT NEWMAN, LLC, an Oklahoma Limited Liability Company; PCH LAB SERVICES, LLC, an Illinois Limited Liability Company; PCH LAB SERVICES, LCC, a Delaware Limited Liability Company; SUN ANCILLARY MANAGEMENT, LLC, a Texas Limited Liability Company; MISSION TOXICOLOGY, LLC, a Texas Limited Liability Company; INTEGRITY ANCILLARY MANAGEMENT, LLC, a Texas Limited Liability Company; CORNERSTONE FORCES, LLC, a Nevada Limited Liability Company; JOHN DOES 1-10; and THE SHATTUCK NATIONAL BANK, N.A.<br><br>       Third Party Defendants. | Case No: CJ 2017-14 |

1

**EXHIBIT 3**

### PCH LAB SERVICES, LLC'S REPLY TO PLAINTIFFS' RESPOSNE TO PCH LAB SERVCIES, LLC'S MOTION TO ENFORCE ARBITRATION AGREEMENTS

### I. FEDERAL LAW REQUIRES THAT THE ARBITRATION AGREEMENTS BE ENFORCED.

Plaintiffs ask the Court to ignore federal law regarding the Federal Arbitration Act ("FAA"). The United States Supreme Court made it clear over thirty years ago that attempts by state legislatures or state courts to avoid or circumvent the FAA are violations of the Supremacy Clause of the United States Constitution. *Southland Corp. v. Keating*, 565 U.S. 1, 16 (1984). In a more recent decision the United States Supreme Court reiterated that principle when it vacated an Oklahoma Supreme Court opinion.

In *Nitro-Lift Technologies, L.L.C. v. Howard*, 568 U.S. 17 (2012), the United States Supreme Court stated the following:

> State courts rather than federal courts are frequently called upon to apply the Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq.*, including the Act's national policy favoring arbitration. It is a matter of great importance, therefore, that state supreme courts adhere to a correct interpretation of the legislation. Here, the Oklahoma Supreme Court failed to do so. By declaring the noncompetition agreements in two employment contracts null and void, rather than leaving that determination to the arbitrator in the first instance, the state court ignored a basic tenet of the Act's substantive arbitration law. The decision must be vacated.

In *Nitro-Lift*, an employer served an arbitration demand on former employees for violating non-compete clauses in their employment contracts. The employees filed suit in district court asking the Court to declare the agreements null and void based on Oklahoma public policy. The district court dismissed the lawsuit, holding that the contracts contained valid arbitration clauses and that enforceability of the non-compete provisions was an issue for the arbitrator. The Oklahoma Supreme Court wrongfully reversed the district court and determined that the matter should not be arbitrated because the underlying contract violated public policy.

2

The United States Supreme Court vacated the Oklahoma Supreme Court's decision, explaining that "it is a mainstay of the Act's substantive law that attacks on the validity of the contract, as distinct from attacks on the validity of the arbitration clause itself, are to be resolved by the arbitrator in the first instance, not by a federal or state court." The United States Supreme Court explained:

> The trial court found that the contract contained a valid arbitration clause, and the Oklahoma Supreme Court did not hold otherwise. It nonetheless assumed the arbitrator's role by declaring the noncompetition agreements null and void. The state court insisted that its 'own jurisprudence controls this issue' and permits review of a 'contract submitted to arbitration where one party asserts that the underlying agreement is void and unenforceable.' But the Oklahoma Supreme Court must abide by the FAA, which is 'the Supreme Law of the Land,' U.S. Const., Art. VI, cl.2, and by the opinions of this Court interpreting that law. It is this Court's responsibility to say what a statute means, and once the Court has spoken, it is the duty of other courts to respect that understanding of the governing rule of law. Our cases hold that the FAA forecloses precisely this type of 'judicial hostility towards arbitration.'"

*Nitro-Lift*, 568 U.S. at 21.

Propositions II, III, IV and VI of Plaintiffs' response brief argue that the arbitration agreements should not be enforced because the contracts as a whole are not enforceable. More specifically, Plaintiffs argue that that the hospital's CEO was not authorized to enter into the Expanded Facility Lab Agreement (II), that the agreements are unenforceable because they have illegal objectives (III), that Plaintiffs were fraudulently induced to enter into the subject agreements (IV) and that the agreements are against public policy (VI). Plaintiffs cite *Shaffer v. Jeffrey*, 915 P.2d 910 (Okla. 1996) for the proposition that this Court should determine the legality of the contracts as a whole before determining whether the arbitration provisions should be enforced. Plaintiffs conveniently ignore the fact that the Federal Arbitration Act did not apply to the arbitration agreement in *Shaffer*. The *Shaffer* court made a point of noting that that "[t]he federal arbitration act is applicable when interstate commerce is involved", and that no party in

3

*Shaffer* "argued that interstate commerce [was] involved or that the federal act applies." *Shaffer*, 915 P.2d at n.10. In fact, the *Shaffer* court specifically discussed the fact that a different result would be reached had the FAA applied. *Id.* at 915-917.

In this case PCH Lab has presented <u>unrefuted evidence</u> that the contracts at issue involve interstate commerce. Exhibit "B" to PCH's Motion to Enforce Arbitration Agreements is an affidavit from Dr. Seth Guterman attesting that the reference lab program involved "lab testing and analysis of blood and urine samples obtained from patients that reside in multiple different states." (*See* ¶ 12 of Guterman Affidavit). Exhibit "C" to PCH's Motion is a printout from Newman Memorial Hospital's website that indicates that Newman Memorial Hospital's state of the art reference lab provides services in multiple states. (Dr. Guterman's Affidavit and hospital's webpage are also attached to this reply brief for the Court's convenience).

Plaintiffs have offered no argument or evidence to refute the fact that the subject contracts involve interstate commerce. Therefore, the Federal Arbitration Act applies, and Plaintiffs cannot avoid the arbitration clauses by alleging that the underlying agreements are void or unenforceable. Federal law requires that the arbitration agreements be enforced.

## II. <u>PLAINTIFFS' CLAIMS DO FALL WITHIN THE SCOPE OF THE ARBITRATION PROVISIONS.</u>

Plaintiffs argue that the arbitration clauses are not broad enough to encompass Plaintiffs' tort claims. (Prop. VII) Both the United States Supreme Court and the Oklahoma Supreme Court disagree. In addition, as will be shown, Plaintiffs own response brief belies its contention that its tort claims do not fall within the scope of the arbitration provision.

As Plaintiffs point out, the Laboratory Management Agreement requires arbitration of any dispute "involving" the Laboratory Management Agreement. The Expanded Facility Lab Agreement requires arbitration of any dispute "arising out of or relating to" the Expanded Facility

4

Lab Agreement. The United States Supreme Court considers such language in an arbitration agreement to be broad and to encompass claims of fraud related to the subject agreement. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 338 U.S. 395 (1967). The Oklahoma Supreme Court agrees. *Long v. DeGeer*, 753 P.2d 1327 (Okla. 1987)("The language used in the arbitration clause to the effect that it applies to any controversy arising out of the account or transactions on the account is clearly broad enough to embrace disputes founded in tort as well as contract as long as the disputes have their roots in the relationship created by the contract.")

Just as importantly, Plaintiffs' own brief establishes that all of its claims fall with the scope of the arbitration provision. On page 17 of their response brief, Plaintiffs state the following:

> The agreements create the mechanism for carrying out the fraudulent scheme. Upon examination of the scheme it becomes evident that the primary purpose of the agreements were [sic] to perpetrate fraud, to conspire to commit fraud, and to commit fraudulent transfers.

It is ludicrous for Plaintiffs to claim that the agreements were used to perpetrate a fraud and then in the same breath argue that such alleged fraud does not involve, arise from, or relate to the agreements themselves. Plaintiffs' own argument establishes that Plaintiffs' tort claims fall within the scope of the arbitration provisions.

In summary, both the United States Supreme Court and the Oklahoma Supreme Court have held that language such as that in the present arbitration clauses clearly encompasses tort claims involving or related to the agreements. In addition, Plaintiffs own admissions establish that its tort claims involve and relate to the agreements. Therefore, Plaintiffs' claims fall within the scope of the arbitration clauses and must be referred to arbitration.

### III. THE DIFFERENT ARBITRATION PROVISIONS ARE NOT IN CONFLICT AND CAN EACH BE ENFORCED SIMULTANEOUSLY.

Plaintiffs argue in Proposition V of their brief that the agreements should not be enforced, because one contract requires arbitration in Chicago pursuant to the Rules for Arbitration of the

5

American Health Lawyers Association Alternative Dispute Resolution Service, and the other contract requires arbitration in Dallas pursuant to Commercial Arbitration Rules of the American Arbitration Association. <u>Plaintiffs provide no authority for the assertion that multiple arbitration provisions are unenforceable simultaneously, because there is no such law.</u> As shown above, the Federal Arbitration Act requires that agreements to arbitrate be enforced pursuant to the parties' agreements. Here the parties agreed to arbitrate disputes arising from different agreements in different venues and under different rules. Plaintiffs cannot now avoid those agreements simply because they do not like them or because they now seem inconvenient. Claims involving the Laboratory Management Agreement must be arbitrated according to that agreement, and claims involving the Expanded Facility Lab Agreement must be arbitrated according to that agreement.

The only case Plaintiffs cite in Proposition V is *Amundsen v. Wright*, 240 P.3d 16 (Okla. Civ. App. 2010). As Plaintiffs explain in their brief, the *Amundsen* court did not enforce an arbitration clause because it called for arbitration in accordance with "the procedures established and maintained by the Central Oklahoma Homebuilder's Association", and no such procedures existed. *Id.* The party seeking arbitration asked the court to rewrite the parties' contract, and the court rightly refused to do so.

In contrast, the American Health Lawyers Association does have arbitration procedures that can be found at https://www.healthlawyers.org/dr/Pages/default.aspx, and the American Arbitration Association does have Commercial Arbitration Rules that can be found at https://www.adr.org/sites/default/files/document_repository/commercial_rules.pdf. *Amundsen* actually stands for the proposition that it is a court's job to enforce the parties' written agreement rather than create a new one. Enforcement of the parties' agreements is precisely what PCH Lab seeks and precisely what Plaintiffs are attempting to avoid. The law requires, and PCH Lab seeks,

6

an order from this Court enforcing the arbitration agreements in the parties' contracts.

IV. **THE AUTHORITY IS CLEARLY A SIGNATORY TO THE LABORATORY MANAGEMENT AGREEMENT, AND IT SHOULD NOT BE ALLOWED TO ASSERT CLAIMS UNDER THE EXPANDED FACILITY LAB AGREEMENT WITHOUT BEING BOUND BY THE TERMS OF THAT AGREEMENT.**

Plaintiffs point out that Shattuck Hospital Authority (the "**Authority**") is not a signatory to the Expanded Facility Lab Agreement and, based on this, they urge the Court to deny PCH Lab's motion. (Prop. I) Importantly, Plaintiffs do not address the Laboratory Management Agreement, because, as shown in PCH Lab's motion, the Authority did sign and is bound by the terms of that agreement, including its mandatory arbitration provision. Plaintiffs' Second Amended Petition creates ambiguity by lumping claims and allegations of various parties together, and it is somewhat difficult to determine which claims are asserted on behalf of the Authority and which are not. To the extent the Authority claims it is a party to the Expanded Facility Lab Agreement, is entitled to enforce such agreement, or is entitled to sue under such agreement, then the Authority should be bound by the terms of such agreement.

Regardless of whether the Authority is bound by the arbitration provision of the Expanded Facility Lab Agreement, it is clearly bound by the arbitration provision of the Laboratory Management Agreement. Newman Memorial Hospital, Inc. is clearly bound by both arbitration provisions.

## CONCLUSION

Therefore, PCH Lab respectfully requests the Court to enforce the mandatory arbitration provisions in the parties' contracts.

Respectfully submitted,

Jim D. Dowell, OBA #19447
Jim D. Dowell, P.C.
2315 Downs Avenue Suite 220
Woodward, Oklahoma 73801
Tel: 580-254-0081
Fax: 580-254-0037
Email: jdowell@dowelllaw.net

## CERTIFICATE OF SERVICE

This is to certify that on this 13th day of October 2017, I caused a true and correct copy of the foregoing to be mailed to:

Jeffrey E. Tate, OBA #17150
J. Clay Christensen, OBA #11789
Brock Z. Pittman, OBA # 32853
Christensen Law Group
The Parkway Building
3401 NW 63rd Str. Suite 600
Oklahoma City, OK 73116
Phone: 405-232-2030
Fax: 405-236-1012
Jeffrey@christensenlawgroup.com
Clay@christensenlawgroup.com
Brock@christensenlawgroup.com
*Attorneys for Plaintiffs*

Kaleb K. Hennigh, OBA #20070
Ewbank, Hennigh & McVay, PLLC
P.O. Box 6207
Enid, OK 73702
Phone: 580-234-4334
Fax: 580-234-4338
hennigh@northwestoklaw.com
*Attorney for SNB Bank, N.A.*

Bert Randolph Willert, OBA # 30955
Law Office of Randy Willert
101 Park Ave. Ste. 1300
Oklahoma City, OK 73102
Phone: 619-564-9598
Fax: 619-330-2400
*Attorney for Sun, Mission and Integrity*